UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
SALVATORE SILVIO, JR.,
                          Plaintiff,

                          14-CV-10035 (JPO)
            -v-

                          OPINION AND
CAROLYN W. COLVIN,                          ORDER
ACTING COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.
---------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Plaintiff Salvatore Silvio, Jr. ("Silvio") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying his application for disability benefits. (Dkt. No. 1.)

       The parties have filed cross-motions for judgment on the pleadings. (Dkt. Nos. 17, 21.) For the reasons that follow, Silvio's motion is granted and the Commissioner's motion is denied.

**I.    Background**

       **A.    Factual Background**

       The following facts are undisputed unless otherwise noted.[1]

       Silvio, who was born in 1954, worked from 1994 until 2007 as a toll collector for the New York State Thruway Authority. (Dkt. No. 18 at 10.) On February 24, 2006, Silvio was injured on the job when he slipped on a broken curb. (*Id.*) Since then, Silvio alleges, he has experienced "constant" pain and loss of movement. (Dkt. No. 8 at 91-93, 106.) He was diagnosed with a variety of conditions following the accident, including a herniated disc, myofascial pain syndrome, and rotator cuff tendonitis. (Dkt. No. 18 at 13.) He states that he suffers from depression due to his injuries. (Dkt. No. 8 at 105.)

---

[1] In citations to the record, page numbers reflect pagination on the Court's electronic filing system, rather than the native numbering of each document.

Silvio returned to work in June 2016 following his accident, but stopped working once again on July 13, 2006, allegedly due to pain brought on by his duties. (Dkt. No. 18 at 10.) The following year, Silvio again attempted to return to work, but was forced to stop because, he alleges, his continued orthopedic issues rendered him physically unable to perform the job. (*Id.*; Dkt. No. 8 at 82.) In particular, according to treating chiropractor Art Donohue, D.C., Silvio's "condition limits his abilit[y] to sit or stand for any duration of time." (Dkt. No. 8-4 at 40.) Silvio also testified that stretching to take money from passing drivers was impossible for him, especially while he was seated, and that his medical needs dictated that he alternate sitting and standing every twenty minutes. (Dkt. No. 8 at 82.)

Silvio has been approved for disability retirement by the Director of Disability Services at the New York State and Local Employees' Retirement System, and he also receives workers' compensation. (*Id.* at 103; Dkt. No. 8-6 at 55.) Silvio is HIV-positive, but has a very low viral load and has not experienced any serious complications related to this condition since 1994. (Dkt. No. 8 at 76, 85-88.) In 2006, he had surgery to remove an unrelated tumor on his neck. (Dkt. No. 18 at 10.)

### B. Medical Background

Following his accident, Silvio has pursued treatment with several physicians. From 2006 to 2011, his primary treating physician was Michael Robinson, M.D., an orthopedist who treated Silvio on at least fifty occasions during that period. (Dkt. No. 22 at 5.) Among other deficiencies, Dr. Robinson noted that Silvio possessed a limited and painful range of motion ("ROM") in his lower back and right shoulder; he also identified evidence of lumbar radiculopathy and a herniated disc. (*Id.* at 6; Dkt. No. 18 at 14). In a "Medical Source Statement" questionnaire for the Social Security Administration ("SSA"), Dr. Robinson concluded that Silvio could only occasionally lift and carry items weighing up to ten pounds, but never more, and that he could only occasionally reach overhead with his right (his dominant) hand. (Dkt. No. 8-6 at 75, 77.) He also concluded that Silvio could sit, stand, and walk for only thirty minutes at a time, and for only a few hours in total, over the course of a work day. (*Id.* at 75-80.)

From October 2011 until at least July 2012, Silvio received osteopathic manipulative therapy from Herbert Garcia, M.D. (Dkt. No. 22 at 4.) Based on his assessments of Silvio's injuries, Dr. Garcia

concluded that Silvio was "totally disabled." (Dkt. No. 18 at 17; Dkt. No. 8-13 at 5.) His opinion as to Silvio's capacity for lifting and carrying was similar to but slightly more optimistic than Dr. Robinson's—up to *twenty* pounds on an occasional basis. (Dkt. No. 8-13 at 5*;* Dkt. No. 22 at 7.)

Silvio received chiropractic treatment from Arthur Donahue, D.C., from April 2007 until at least October 2010. (Dkt. No. 18 at 16; Dkt. No. 22 at 8.) Dr. Donahue's opinion as to Silvio's capacity for lifting and carrying matched Dr. Robinson's opinion. (Dkt. No. 8-11 at 11.) He also determined that Silvio could stand or walk for less than two hours per work day and that he could sit for less than six hours.

Over the course of his treatment, and in connection with his applications for disability benefits and Worker's Compensation, Silvio also saw several physicians for one-time or sporadic examinations. Most relevant here is Steven Rocker, M.D., a consultative physician for the SSA, who examined Silvio once in 2008. (Dkt. No. 8-4 at 52.) Of Silvio's many physicians, Dr. Rocker gave by far the most optimistic opinion, finding "no limitation for . . . sitting, or handling," and only a "mild limitation for standing, walking, lifting, and carrying." (*Id.*)

### C.     Prior Procedural History

On May 9, 2008, Silvio filed an application for disability benefits, alleging disability stemming from the aforementioned injuries to his shoulder, hips, and back, and from related depression. (Dkt. No. 22 at 4.) This application was denied by Administrative Law Judge ("ALJ") Robert Gonzales in a decision dated March 19, 2010. (*Id.*) The ALJ's decision was vacated by the Social Security Appeals Council on May 31, 2010, and remanded for further consideration of Silvio's "residual functional capacity" (or "RFC")—that is, "what [Silvio] can still do despite the limitations imposed by his impairment." *Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015) (citation omitted). (Dkt. No. 22 at 4). Specifically, the ALJ was directed to reconsider Silvio's capacity to perform his past work, as well as the medical opinions of his treating sources. (*Id.*; Dkt. No. 8 at 146; Dkt. No. 18 at 9).

**D.     The ALJ's Opinion**

After receiving additional testimony, ALJ Gonzales issued an opinion that once again denied Silvio's claim. That opinion is the subject of Silvio's instant appeal. (Dkt. No. 8 at 15.) In it, the ALJ followed the familiar five-step inquiry mandated by the Commissioner for determining whether a claimant is disabled:

> First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not disabled.
> Second, if the claimant is not working, the Commissioner must determine whether the claimant has a "severe" impairment, i.e., an impairment that limits his ability to do physical or mental work-related activities. If not, the claimant is not disabled.
> Third, if there is a severe impairment, the Commissioner determines if the impairment meets or equals the criteria of a per se disabling impairment contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Listings of Impairment).
> If the claimant's impairment does not meet or equal a listed impairment, before proceeding to step four, the Commissioner determines, based on all the relevant medical and other evidence of record, the claimant's "residual functional capacity," which is what the claimant can still do despite the limitations imposed by his impairment.
> Fourth, the Commissioner considers whether the claimant's residual functional capacity permits him to return to his past relevant work. If so, the claimant is not disabled.
> Fifth, if the claimant cannot return to his past work, the Commissioner considers, based on the claimant's residual functional capacity and vocational factors, whether the claimant can do other work existing in significant numbers in the national economy. If so, the claimant is not disabled.

*Lesterhuis*, 805 F.3d at 86 n.2 (citing 20 § CFR 404.1520) (formatting added) (internal citations omitted).

At the first three steps, the ALJ found (1) that Silvio had not engaged in "substantial gainful activity" during the claim period, and that Silvio's brief period of employment in 2007 was an "unsuccessful work attempt"; (2) that Silvio presented a number of "severe impairments"; and (3) that those impairments did not meet or equal the per se disabling impairments enumerated in the regulations. (Dkt. No. 8 at 17-19.)

At step four, in order to establish whether Silvio could perform his "past relevant work," the ALJ obtained testimony from vocational expert ("VE") Marian Marracco regarding the residual functional capacity required to work as a toll collector, as well as the types of accommodations that, if found medically necessary, would preclude such employment as a practical matter. (Dkt. No. 18 at 19; Dkt. No. 8 at 109-13.) The VE testified that a person of Silvio's age, education, and work history who could

frequently reach with his arms in all directions, and who could occasionally lift up to twenty pounds, could do the job. (Dkt. No. 8 at 109-10.) However, if such a person had the ability to reach only "on an occasional basis," or if that person could lift and carry only up to ten pounds with any regularity, he would be unable to perform the required duties. (*Id.* at 111.)

Relying on the VE's testimony, the ALJ found that Silvio "had the residual functional capacity to perform a wide range of exertionally light work." (*Id.* at 20.) He therefore terminated his inquiry at step four, finding that Silvio was capable of performing his "past relevant work as a toll collector" and was therefore not disabled for purposes of the Social Security Act. (*Id.* at 28.) In the process, he found that Silvio would be able to perform any work that "does not require more than frequent overhead reaching using the right upper extremity," and also that he "must be allowed to alternate sitting and standing at will and cannot couch [*sic*], climb, crawl or kneel more than occasionally." (*Id.* at 20.) No explicit findings were made regarding Silvio's ability to lift and carry, but based on the vocational expert's testimony regarding the RFC required to work as a toll collector, it follows that the ALJ found that Silvio could lift and carry at least twenty pounds occasionally. (*Id.*)

In making these RFC findings, the ALJ assigned greatest weight to the opinion of consulting physician Dr. Rocker, on the grounds that Dr. Rocker "perform[ed] a comprehensive examination of the claimant and the findings yielded therein are generally consistent with those observed by . . . Dr. Robinson." (*Id.* at 25.) After assigning greatest weight to Dr. Rocker's opinion, a consultative physician, the ALJ assigned weight to each of the other medical opinions in the record based primarily upon the degree to which they accorded with Dr. Rocker's opinion. (*Id.* at 26-27.)

The ALJ did not give controlling weight to the opinions of the treating orthopedists, Drs. Robinson and Garcia, because he found them to be partially in conflict with findings and opinions of other physicians—primarily Dr. Rocker. (*Id.* at 26-7.) He gave "great weight" to Dr. Garcia's finding that Silvio could occasionally lift and carry up to twenty pounds, but "less weight" to Dr. Robinson's finding that he could occasionally lift and carry up to ten pounds, which would indicate that Silvio could not perform his prior work as a toll collector per the VE's testimony. (*Id.* at 26-27.) In rejecting Dr.

5

Robinson's opinion on this point, the ALJ cited the fact that Silvio's physicians had for the most part recommended "conservative treatment measures," and also stated that such a finding was inconsistent with, in his view, the paucity of evidence showing any "neurological deficit." (*Id.* at 26.)

In addition, the ALJ found that Silvio's credibility was "minimal" and therefore his subjective complaints did not support a finding of disability. (*Id.* at 24, 27.) He based this assessment upon four factors: (1) that certain of Silvio's activities, such as regular showering, driving himself to medical appointments, and riding the "kiddy rides" at Disneyland with his children, seemed inconsistent with his report of disability; (2) that his "treatment has remained conservative in nature"; (3) that Silvio receives Workers' Compensation and a disability pension, which the ALJ stated "raises the question of whether the claimant's continued unemployment is truly due to his alleged medical impairments or whether it is due to a lack [of] motivation to seek and maintain employment in light of his substantial monthly income"; and (4) that "the claimant betrayed no evidence of debilitating symptoms while testifying at the hearing, which lasted for nearly an hour." (*Id.* at 24-25, 99.)

On October 17, 2014, the Appeals Council denied review of this decision, rendering it the Commissioner's final decision. (Dkt. No. 8 at 8.)

## II.     Discussion

Silvio urges this Court to remand, alleging that the ALJ erred in both his credibility and RFC determinations.

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). "We must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Petrie v. Astrue*, 412

F. App'x 401, 403-04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)) (internal quotation marks omitted).

"Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)).

### A.     The Credibility Determination

The ALJ used two questionable factors in arriving at his conclusion that Silvio lacked credibility. First, the fact that a disability claimant has other sources of income does not, on its own, undermine the credibility of her testimony concerning the pain, suffering, and limitations resulting from her impairment. *See Cordero v. Astrue*, No. 11-CV-5020, 2013 WL 3879727, at *26 (S.D.N.Y. July 29, 2013) (collecting cases); *Rinker v. Chater*, No. 95-CV-3923, 1997 WL 47791, at *9 (S.D.N.Y. Feb. 6, 1997).  Thus, it was erroneous for the ALJ to conclude that Silvio's receipt of other disability benefits impugned his credibility.

Second, the ALJ "improperly characterized the fact that [physicians] recommended only conservative [treatment] . . . as substantial evidence that plaintiff was not physically disabled," and thereby erroneously "imposed [his lay] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw v. Chater,* 221 F.3d 126, 134-35 (2d Cir. 2000); *see also Kessler v. Colvin,* No. 14-CV-8201, 2015 WL 6473011, at *5 (S.D.N.Y. Oct. 27, 2015) (holding that "the nature of a claimant's treatment regimen cannot justify" a negative credibility determination) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

That said, the ALJ did not rely solely on these factors, as he also considered evidence regarding Silvio's day-to-day activities, as well as the ALJ's own observations of Silvio, both of which are acceptable factors in a credibility analysis.  20 C.F.R. § 404.1529(c)(3).  Because substantial evidence independently supports the ALJ's findings that Silvio was not entirely credible, "[t]he ALJ's opinion is not so threadbare as to warrant remand on the credibility determination alone." *Kessler,* 2015 WL 6473011, at *6.

### B.     The Treating Physician Rule

An ALJ must give a treating physician's opinion "controlling weight" as long as it is supported by medical evidence and is not contradicted by the other substantial evidence in the record. *Rosa v. Callahan*, 168 F.3d 72, 78-9 (2d Cir. 1999) (Sotomayor, J.).  This is because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations."  20 C.F.R. § 404.1527(c)(2).

For substantially the same reasons, "ALJs should not rely heavily on the findings of consultative physicians after a single examination."  *Selian v. Astrue,* 708 F.3d 409, 419 (2d Cir. 2013); *see also Sanders v. Comm'r of Soc. Sec*., 506 F. App'x 74, 78 n.4 (2d Cir. 2012) ("[A] contradictory RFC provided by [a consulting physician] . . . is not a good reason to disregard [the treating physician's] medical opinion.  Where . . . there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'") (quoting *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir.1990)).  Indeed, "consultative exams are often brief, are generally performed without benefit or review of a claimant's medical history and, at best, only give a glimpse of the claimant on a single day."  *Cruz,* 912 F.2d at 13 (citation and internal quotation marks omitted).

If an ALJ does not give the treating physician's opinion controlling weight, he must "explicitly consider" four factors in deciding the weight to be given that opinion: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (alteration in original) (citing *Selian*, 708 F.3d at 418).  In doing so, the ALJ may not "substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Id.* (citing *Burgess*, 537 F.3d at 131)*; see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free

to set his own expertise against that of a physician who submitted an opinion to or testified before him.") (quoting *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983)) (alterations omitted).

This does not mean that the ALJ must recite each of the factors in every case, so long as "the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (per curiam)). It does, however, mean that the ALJ must "comprehensively set forth" "good reasons" for the weight given to a treating physician's opinion, in order to "assist[ courts'] review of the Commissioner's decision and let[] claimants understand the disposition of their cases." *Halloran,* 362 F.3d at 33 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)) (internal quotation marks omitted). "The failure to provide 'good reasons' for not crediting a treating source's opinion is a ground for remand." *Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009) (citing *Halloran,* 362 F.3d at 33).

If credited, treating physician Dr. Robinson's opinion that Silvio could only lift and carry up to ten pounds would indicate that Silvio was unable to perform his past work, in light of the VE's testimony that a greater capacity was required to work as a toll collector. (Dkt. No. 8 at 111.) The ALJ discounted this opinion because (1) he found that the record did not contain sufficient evidence of "neurological deficit" to support it, and (2) he believed it was inconsistent with the recommendations of various doctors that Silvio continue to manage his symptoms with "only conservative treatment measures." (*Id.* at 26.)

The ALJ's assertion that Silvio's "conservative" treatment regimen casts doubt upon Dr. Robinson's opinion runs afoul of Second Circuit precedent. An ALJ may not "impos[e his lay] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw,* 221 F.3d at 134-35; *see also Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005) ("[T]he ALJ erred in questioning the validity of [a physician's] opinion based on his 'conservative' course of treatment.") (citing *Shaw,* 221 F.3d at 134).

Further, in relying upon the purported scarcity of evidence of a "neurological deficit" to discredit Dr. Robinson's medical opinion, the ALJ erred by substituting his lay judgment for that of a competent

9

medical professional. *Greek*, 802 F.3d at 375; *see Rosa,* 168 F.3d at 79 (Sotomayor, J.) ("[A]s a 'lay person[ ],' the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by [a physician] in his assessment.") (citing *Wagner v. Secretary of Health and Human Servs*., 906 F.2d 856, 861 (2d Cir.1990)); *Balsamo*, 142 F.3d at 81. This error is particularly acute when the ALJ is considering the opinion of a treating source. *See* 20 C.F.R. § 404.1527(c)(2).

It is also worth noting that virtually all of Silvio's physicians determined that his ability to lift and carry was significantly limited, including Drs. Donohue and Garcia, the other treating physicians. (Dkt. No. 8-11 at 11; Dkt. No. 8-13 at 5.) The ALJ gave "little weight" to the opinion of Dr. Donohue that Silvio could lift up to ten pounds, again citing insufficient record evidence of a "neurological deficit." (Dkt. No. 8 at 27.) However, he assigned "great weight" to that of Dr. Garcia, who concluded that Silvio could occasionally lift up to twenty pounds (the minimum required to perform Silvio's past work). (*Id.*) No explanation was given as to why a scarcity of "neurological deficit" findings would be consistent with the ability to occasionally lift twenty pounds but inconsistent with the ability to lift ten pounds. While it is always impermissible for the ALJ to "substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion," *Greek*, 802 F.3d at 375, a decision which does so is especially suspect where, as here, the ALJ is parsing medical opinion in such a fine-grained manner.

As noted above, other medical sources in the record determined that Silvio had lifting and carrying weight restrictions somewhat less severe than those identified by Dr. Robinson. Upon remand, the ALJ is of course free to grapple with those contrasting opinions in accordance with the regulations set out in 20 C.F.R. § 404.1527(c) and the treating physician rule. In this case, however, neither reason provided by the ALJ for giving "less weight" to this treating physician's opinion is proper under the law.

The ALJ must explicitly "set forth" "good reasons" for giving less weight to a treating physician's opinion, and courts in this Circuit "do not hesitate to remand when the Commissioner has not

provided 'good reasons.'" *Halloran,* 362 F.3d at 33; *see Burgin*, 348 F. App'x at 648.  Remand is therefore required.

### III. Conclusion

For the foregoing reasons, Silvio's motion for judgment on the pleadings is GRANTED and the Commissioner's motion for judgment on the pleadings is DENIED.  The case is hereby remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motions at docket numbers 17 and 21.

SO ORDERED.

Dated: June 16, 2016
       New York, New York

                                                         J. PAUL OETKEN
                                          United States District Judge